**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RENE BROWN,**

                                    **Plaintiff,**

        **v.**                                                    **1:21-cv-00641**
                                                                  **(TJM/ML)**

**ARIEL FALLON, as Assistant District**
**Attorney of Albany County and Individually,**

                                    **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

        Plaintiff Rene Brown ("Plaintiff' or "Ms. Brown") commenced this action asserting

claims against Defendant Albany County Assistant District Attorney Ariel Fallon

("Defendant" or "ADA Fallon") following Ms. Brown's criminal prosecution in New York state

court.  *See* Compl., Dkt. 1.  The Complaint asserts two causes of action.  *See id.*  The first,

brought pursuant to 42 U.S.C. §1983 and labeled as a claim for malicious prosecution,

asserts that ADA Fallon's actions in connection with Ms. Brown's criminal prosecution

violated Ms. Brown's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to

the United States Constitution. *See id.*, at  ¶¶ 34-45.  The second, brought pursuant to New

York state law, asserts that ADA Fallon's actions in connection Ms. Brown's criminal

prosecution violated Ms. Brown's rights "under the Constitution and laws of the State of

1

New York" and which establish the elements of the tort of malicious prosecution. *See id.*, at ¶¶ 46-60.

ADA Fallon moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure to dismiss the Complaint in its entirety. *See* Dkt. 25.  Plaintiff opposes the motion,  Dkt. 33, and Defendant files a reply. Dkt. 34.  For the reasons that follow, the motion is granted.

## II.   STANDARD OF REVIEW

In deciding a Rule 12(c) motion for judgment on the pleadings, the Court employs the same standards as those applicable to a Rule 12(b)(6) motion.  *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015).   On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").   "'[I]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052 (KMK), 2020 WL 3618190, at *3 (S.D.N.Y. July 2, 2020)(quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted)); *see DiFolco v. MSNBC*

*Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint that consists merely of "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" or "'naked assertion[s]' devoid of 'further factual enhancement' " does not meet the plausibility standard. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

III.   **BACKGROUND**

The following relevant facts are taken from the Complaint.

On July 21, 2019, a physical altercation and argument ensued between Plaintiff's son(s), her eldest son's girlfriend, and the girlfriend's family members at 16 Boenau Street in Albany, New York.  During the course of the encounter, someone at the scene fired several rounds from a .380 caliber pistol.  At the time of the shooting, Plaintiff was not at 16 Boenau Street.

At all times relevant to this case, Plaintiff resided at 2525 Sixth Avenue, First Floor,

Troy, NY, with her minor son.  On the day following the shooting, July 22, 2019, the Albany

City Court issued a search warrant for Plaintiff's apartment in Troy, NY.  The scope of the

warrant was limited to items evincing handgun possession, identification indicating

ownership or occupancy of the residence, and clothing identified as worn by one of

Plaintiff's sons during the altercation, to wit, a pair of dark green khakis and a gray hooded

sweatshirt.  Detective Stephen Behrens and other members of the Albany Police

Department ("APD") executed the warrant.  Plaintiff was detained for 20 minutes by

Detective Behrens and other police officers while the search was conducted. The search of

Plaintiff's apartment revealed no evidence consistent with her possession of a handgun.

"Instead, the only property and evidence that was located and seized was Plaintiff's white

cell phone which arguably was outside the scope of the warrant."  Comp. ¶ 11.  Detective

Behrens prepared and filed a property report the same day that shows that neither evidence

of gun possession nor the clothing worn by Plaintiff's son on the day of the incident was

located in Plaintiff's apartment.

       After the search was executed, Plaintiff was taken to the Albany Police South Station

in the City of Albany.  Police questioned Plaintiff at the station for approximately

one-hundred and twenty (120) minutes without mirandizing her.  The Complaint asserts that

"Plaintiff was not mirandized prior to being questioned by law enforcement personnel

because she was not arrested prior to being questioned/interviewed." Compl. ¶ 50.  There

are no allegations in the Complaint that ADA Fallon directed the Albany police to detain

Plaintiff on July 22, 2019, or that ADA Fallon participated in or was involved with Ms.

Brown's questioning by the police. *See generally, id.*  After the police finished their

questioning, they determined that there was no probable cause to arrest Ms. Brown, so they

released her from custody without further action.

Detective Behrens also searched Ms. Brown's oldest son's apartment on July 22, 2019.  A pair of green khaki pants and a paycheck issued to Plaintiff's eldest son were seized there.  Detective Behrens prepared and filed a property report indicating that the identified clothing was located in and seized from the eldest son's apartment, "and notably not from Plaintiff's apartment." *Id*. ¶ 12.

Detective Behrens' property reports dated July 22, 2019 "named Plaintiff's sons as the defendants and notably did not named Plaintiff as a defendant." *Id*. ¶ 13.  The property reports were available for retrieval by ADA Fallon as of July 22, 2019.

After Plaintiff was questioned and released, "APD arrested Plaintiff's two (2) sons for the charges levied against [sic] by ADA Fallon in connection with the altercation that occurred the day before, on July 21, 2019."  *Id*. ¶ 15.

The Complaint alleges:

16. ADA Fallon however disregarded Detective Behrens' property report indicating that no evidence of firearm possession was located in Plaintiff's apartment and disregarded the Albany Police's conclusion that there was not probable cause to arrest Plaintiff or charge her with a crime. ADA Fallon instead instigated her own investigation and set about creating her own evidence to present to the Grand Jury. As part of her investigations [sic], ADA Fallon retrieved the transcript[1] of the interview had with Plaintiff on July 22, 2019. These actions were taken in order to produce evidence that could be used to show probable cause for an accusatory instrument.

17. In addition, and in further contravention of the Albany Police's determination that there was no probable cause for charges and the complete absence of physical evidence, ADA Fallon crafted Grand Jury Charges on July 26, 2019 against Plaintiff for Criminal Possession of a Weapon in the Second Degree, in violation of Section

---

[1] The Complaint refers to "the transcript" of Plaintiff's interview, however Plaintiff's memorandum of law in opposition to ADA Fallon's motion refers to "the police interview tapes of July 22, 2019." Dkt. 33, at p. 11.  The Court will refer to this evidence as "the transcript" to be consistent with the allegations in the Complaint.

265.03 of the Penal Code and for Conspiracy to possess a firearm in the Fourth Degree, in violation of Section105.10 of the Penal Code.

18. ADA Fallon then[] presented her fabricated evidence to the Grand Jury; evidence that was neither competent nor admissible because it was obtained prior to Plaintiff being advised of her *Miranda* rights and was obtained in violation of Plaintiff's right to counsel as well as her rights under both the US and New York State constitutions. The Grand Jury was presented by ADA Fallon with evidence that was insufficient pursuant to CPL 210.10(1)(b)[2] to establish the commission of the crimes charged and was also inadmissible at trial. In doing so, ADA Fallon prejudiced the Grand Jury which as anticipated and predicted by ADA Fallon returned an indictment against Plaintiff. On information and belief, no other evidence, aside from Plaintiff's out of court statements was presented to the Grand Jury as no other evidence was obtained against Plaintiff.

19. Under Sealed Indictment No. 15B-9192 and in contravention of the Albany Police's determination that arrest was not supported by probable cause, ADA Fallon's misconduct, uninterrupted by any third party, precipitated Plaintiff's arrest on August 2, 2019.

*Id.* ¶¶ 16-19.

Plaintiff was arraigned on August 2, 2019, and detained for "8 hours or more" until she was able to post bail. *Id*. ¶ 21.

On August 6, 2019, ADA Fallon provided Plaintiff's criminal defense counsel with notice that she intended to offer Plaintiff's out-of-court statements at trial and indicated her readiness for trial on August 12, 2019.  The Complaint alleges that ADA Fallon's "attempt to rush the case to trial was thwarted by Defense Counsel filing first a Motion for leave to conduct a private investigation which motion was granted on August 12, 2019." *Id*. ¶ 23. On August 14, 2019, ADA Fallon offered a plea bargain to Plaintiff in exchange for her cooperating with the District Attorney's Office in its prosecution of Plaintiff's sons.  Plaintiff

---

[2] NY CPL §210.10 addresses the requirement of, and methods of securing, a defendant's appearance for arraignment upon indictment.  It does not address the sufficiency of evidence to establish the commission of a crime, and there is no subsection (1)(b) in this statute.

rejected that plea offer.

On October 3, 2019, Plaintiff's defense counsel filed a motion to dismiss "on the basis that, *inter alia*, the evidence presented to the Grant Jury was legally insufficient to sustain the offenses charged against Plaintiff and on the grounds that Plaintiff's arrest was wholly without probable cause." *Id*. ¶ 25.  After the initial pre-trial court conference held on October 13, 2019 during  which Plaintiff's counsel highlighted the insufficiency of the evidence, ADA Fallon refused "to dismiss or even amend the charges." *Id*. ¶ 26.  "Instead, she submitted a Supplemental Affirmation in Opposition to Plaintiff's Motion to Dismiss and made a contorted argument that the absence of any evidence that Plaintiff possessed a weapon, provided a weapon to her sons or drove her sons to the location of the altercation undermined [sic] the conspiracy to possess a weapon charge." *Id*. ¶ 26.

Plaintiff also claims that during the course of the criminal proceedings, ADA Fallon failed to satisfy her obligations to turn over all *Brady* materials including exculpatory material, which further prejudiced Plaintiff's constitutional rights.

On October 25, 2019, the Hon. Roger D. McDonough, Acting New York State Supreme Court Justice, found that the evidence that was presented to the Grand Jury was legally insufficient to support the charges in the Indictment or any applicable lesser included offenses. Accordingly, Judge McDonough granted Plaintiff's motion to dismiss all charges due to the insufficiency of evidence before the Grand Jury.

## IV.    DISCUSSION

### a.  Official Capacity

ADA Fallon argues that she is entitled to sovereign immunity under the Eleventh

Amendment to the extent she is sued in her official capacity as an assistant district attorney. Plaintiff responds that she is not suing ADA Fallon in her official capacity, but only in her individual capacity.  Dkt. 33, at p. 19.   Accordingly, that much of ADA Fallon's motion to dismiss any official capacity claim against her is granted.

### b.  Absolute Prosecutorial Immunity - §1983 Claims

ADA Fallon asserts that she is entitled to absolute prosecutorial immunity for her conduct that is alleged to have violated Ms. Brown's federal rights. "The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863–64 (2d Cir. 2022)(citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)).[3]  In *Anilao*, the Second Circuit explained:

> Our cases make clear that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)(quotation marks omitted). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial. *See id.*; *Imbler*, 424 U.S. at 431, 96 S. Ct. 984 (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case"). For that reason, we have held that absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a

---

[3]As the Second Circuit stated in a footnote in *Anilao*: "Recognizing that it would be unjust to allow prosecutorial misconduct to go unpunished and that absolute immunity does not render the public powerless, we have pointed to other methods, such as criminal and professional sanctions, to deter and redress wrongdoing." *Anilao*, 27 F.4th at 864, n. 3 (citing *Schloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989); *Imbler*, 424 U.S. at 429 & n.29).

> prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory*, 25 F.3d at 83 (cleaned up).

*Id.* at 864 (footnote omitted).

The courts apply a "functional approach" to determine whether a prosecutor enjoys absolute immunity. *Simon v. City of New York*, 727 F.3d 167, 171-72 (2d Cir. 2013).  This approach examines "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal quotation marks omitted).  Functions to which absolute immunity applies are when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, involves the exercise of discretion. *See Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011)("Prosecutors are absolutely immune from suit only when acting as advocates and when their conduct involves the exercise of discretion.")(citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). This includes such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," *Simon*, 727 F.3d at 171, and whether and when to drop charges. *Taylor*, 640 F.2d at 452 ("[T]he failure to drop charges until immediately before trial [has] been held to be prosecutorial [activity] for which absolute immunity applies.")(citations omitted). "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012))(quoting *Imbler*, 424 U.S. at 431 n. 33).

> Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured

9

testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424
U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial
proceedings," *Burns*, 500 U.S. at 490 (collecting cases), and "conspiring to
present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

*Wilson v. County of Onondaga*, 5:20-CV-1489 (GTS/TWD), 2021 WL 5971316, at *6

(N.D.N.Y. Apr. 21, 2021).  "[O]nce a court determines that challenged conduct involves a

function covered by absolute immunity, the actor is shielded from liability for damages

regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v.*

*County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)(citing *Cleavinger v. Saxner*, 474 U.S.

193, 199–200 (1985)).

"By contrast, prosecutors receive only qualified immunity when performing

'administrative duties and those investigatory functions that do not relate to an advocate's

preparation for the initiation of a prosecution or for judicial proceedings.'" *Simon*,  727 F.3d

at 172 (quoting *Buckley*, 509 U.S. at 273).  "Investigation, arrest, and detention have

historically and by precedent been regarded as the work of police, not prosecutors, and they

do not become prosecutorial functions merely because a prosecutor has chosen to

participate." *Id.* (interior quotation marks and citations omitted); *see Giraldo*, 694 F.3d at

166 ("'[A]ctions taken as an investigator enjoy only qualified immunity.'")(quoting *Zahrey v.*

*Coffey*, 221 F.3d 342, 346 (2d Cir. 2000)).  "Under a functional approach, actions are not

shielded by absolute immunity merely because they are performed by a prosecutor. 'A

prosecutor's administrative duties and those investigatory functions that do not relate to an

advocate's preparation for the initiation of a prosecution or for judicial proceedings are not

entitled to absolute immunity.'" *Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 273).

"Although all investigative activity could be considered in some sense to be
'prepar[ation] for the initiation of judicial proceedings,' the Supreme Court has

10

sought to draw a line between those preparatory steps that a prosecutor takes to be an effective advocate of a case already assembled and those investigative steps taken to gather evidence." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir.1998) (quoting *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606). The Supreme Court "has identified 'evaluating evidence and interviewing witnesses' as falling on the absolute immunity side of the line, leaving 'searching for the clues and corroboration' that might lead to a recommendation for an arrest on the qualified immunity side." *Id.* at 94 (quoting *Buckley*, 509 U.S. at 273, 113 S. Ct. 2606).

Therefore, not every interview, interrogation, or other act by a prosecutor with the potential of revealing new information is an investigative act entitled to only qualified immunity. *See* [*Warney v. Monroe Cty.*, 587 F.3d 113, 124 (2d Cir. 2009)](prosecutors' actions to deal with post-trial initiatives challenging a criminal conviction, even though they could be seen as investigative and administrative, were "also integral to the overarching advocacy function"). Good prosecutors may—usually should—perform acts reasonably characterized as investigative at all phases of a criminal proceeding. The investigative acts that are entitled to only qualified immunity are those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators. *Smith*, 147 F.3d at 94.

In contrast, investigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction, are shielded by absolute immunity when done by prosecutors.

*Id.* at 166.

"On a motion to dismiss a claim against a prosecutor based on absolute immunity, the plaintiff's allegations are taken as true." *Vann v. City of Rochester*, 6:18-CV-06464(MAT), 2019 WL 2646616, at *3 (W.D.N.Y. June 27, 2019)(citing *Kalina*, 522 U.S. at 122, in turn citing *Buckley*, 509 U.S. at 261). "'[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.'" *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486-87 (1991)(citations omitted)). "Analysis of a claim of immunity requires [the

11

Court] to view the relevant circumstances as would a reasonable official in the claimant's position." *Giraldo*, 694 F.3d at 165  (citing *Hill*, 45 F.3d at 662 ("[T]he 'functional' test for absolute immunity is an objective one; it does not depend upon the state actor's subjective intent."); *Dory*, 25 F.3d at 83; *Burns*, 500 U.S. at 487–88 (allegations that prosecutor "deliberately misled the Court" during preliminary hearing were deemed irrelevant where the prosecutor's objective act—presenting evidence at the hearing—enjoyed absolute immunity)). "The relevant question, therefore, is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor. If the generic acts are within those functions, absolute immunity applies to protect the prosecutor even in the face of a complaint's allegations of malicious or corrupt intent behind the acts." *Id.* at 166 (citing *Burns*, 500 U.S. at 489–90).

## Analysis

In opposition to ADA Fallon's contention that she is entitled to absolute prosecutorial immunity, Plaintiff argues that she is suing ADA Fallon for damages "arising from ADA Fallon's actions taken during the investigatory phase of the case that resulted in Plaintiff being arrested without probable cause as well as being indicted and detained through her knowing use of false, fabricated, misleading or inherently unreliable evidence."  Dkt. 33, at p. 11 (citing Compl. at ¶¶ 41-43[4]).  Plaintiff further argues that she can maintain her § 1983 claims against ADA Fallon because

> Plaintiff alleges the non-prosecutorial conduct engaged in by Ms. Fallon as being that she 1) instigated her own investigation of the alleged gun possession crime and fabricated her own evidence of a crime that did not occur by pulling the police

---

[4] These paragraphs in the Complaint are part of Plaintiff's §1983 claims against ADA Fallon and rely on the prior allegations in the Complaint.

interview tapes of July 22, 2019 that the police did not submit to the DA's Office (*see* Dckt. Doc. No.1 at paragraph 16); and 2) substituted her own advice and opinion as to the existence of probable cause for that of the Albany Police Department detectives and issued a sealed indictment and made a warrantless arrest of the Plaintiff (*See* Dckt Doc No. 1 at paragraph 16 and 17).

Dkt. 33, at p. 11.

Plaintiff's arguments are without merit.

Viewed through the eyes of a reasonable prosecutor, ADA Fallon's acts in this case were well within her legitimate function as a prosecutor during the judicial phase of the criminal process.  Plaintiff's invocation of the term "investigation" to describe ADA Fallon's conduct does not make it so. *See Vann*, 2019 WL 2646616, at *3 ("As an initial matter, Vann's repeated invocation of the adjective "investigative" to describe Harrigan's conduct is immaterial to the Court's inquiry.")(citing *Watson v. Grady*, No. 09-CV-3055 KMK, 2010 WL 3835047, at *16 (S.D.N.Y. Sept. 30, 2010) ("[The] [p]laintiff's labeling of the prosecutor's actions as investigatory does not make it so."), in turn citing *Crews v. Cty. of Nassau*, No. 06–CV–2610, 2007 WL 4591325, at *15 n. 15 (E.D.N.Y. Dec. 27, 2007) (stating that the plaintiffs' "labeling various actions 'investigative' or 'administrative' in the complaint is of no moment")).  Rather, the Court must look at the actual substance of the actions and determine whether they were the work of an advocate and integral to the prosecution. *Id.* (citing *Kalina*, 522 U.S. at 130).

ADA Fallon's decision to review the transcript does not make her conduct investigatory within the meaning of the absolute prosecutorial immunity doctrine.  The allegations in the Complaint do not indicate that ADA Fallon had anything to do with or participated in Ms. Brown's interview by members of the Albany Police Department.  Rather,

13

the Complaint indicates that Ms. Brown was brought to the Albany Police South Station after the search of her apartment, and interviewed as part of the APD's investigation into the circumstances surrounding the July 21, 2019 shooting incident.  Although Plaintiff was not charged by the police, her sons were identified as a defendants in Detective Behrens' property reports filed the same day as Plaintiff's interview, and the sons were arrested shortly thereafter for their alleged involvement in the altercation that occurred on July 21, 2019.   Thus, it is clear that the judicial phase of the criminal process related to the July 21, 2019 shooting incident had begun, and that Plaintiff's interview conducted by APD officers was part of the process of assembling and gathering evidence for that prosecution.

Unlike in *Zahrey*, ADA Fallon's act of pulling the transcript was not an investigatory act intended to create evidence to commence the judicial phase of the criminal process. That phase had already begun.  A reasonable prosecutor would view ADA Fallon's act of pulling and reviewing the transcript a discretionary prosecutorial act to determine whether Plaintiff's already-provided statement supported prosecuting her.  Thus, a reasonable prosecutor would view this conduct as "those preparatory steps that a prosecutor takes to be an effective advocate of a case already assembled."  *Geraldo*, 694 F.3d at 166.  Even assuming that Plaintiff was charged similarly to her sons related to the July 21, 2019 shooting incident, the earlier charges against her sons would not prevent a reasonable prosecutor from exploring whether Plaintiff should also be charged related to this incident. ADA Fallon's acts of pulling and reviewing the transcript are clearly tasks adjunct to her advocacy functions of  "deciding whether to bring charges and presenting [the] case to a grand jury." *Simon*,  727 F.3d at 171.

Furthermore, the courts have long held that a prosecutor's determination to bring

14

charges against an individual by the presentment of a case to a grand jury, even if it involves the presentation of false or fabricated evidence, is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies. *See Imbler*, 424 U.S. at 431 (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case"); *Anilao*, 27 F.4th at 864 ("[A] prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial.")(citations omitted); *Simon*,  727 F.3d at 171 (absolute immunity applies to such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas"); *Bernard*, 356 F.3d at 503 (The act of "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from [the grand jury] ... lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.")(citing *Imbler*, 424 U.S. at 431 & n. 34); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir.1995) (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984)("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity...." ); *J. & W. Trading & Leasing Inc. v. New York*, 2015 WL 4135961, at *3 (N.D.N.Y. 2015)(granting absolute immunity where prosecutor allegedly presented false testimony before grand jury).   ADA Fallon's use of the presumably inculpatory statements

in the transcript to obtain the Indictment[5] is conduct intimately associated with the judicial phase of the criminal process for which ADA Fallon is entitled to absolute prosecutorial immunity. *See Dieter v. Quintilone*, 764 Fed. Appx. 71, 73 (2d Cir. 2019)(unpublished)("As the presentation of inculpatory evidence showing probable cause to the grand jury is an essential prosecutorial function, necessary to obtain an indictment, doing so is protected by absolute immunity. It is 'intimately associated with the judicial phase of the criminal process.'")(quoting *Simon*, 727 F.3d at 171–72).

The Court fails to see how ADA Fallon's presentation of Plaintiff's statements to the grand jury amounts to ADA Fallon "creating her own evidence to present to the Grand Jury," or of her "fabricat[ing] her own evidence of a crime that did not occur." As ADA Fallon points out, the Complaint does not particularize how it is that ADA Fallon purportedly created her own evidence to present to the grand jury or fabricated such evidence. Thus, there are no plausible factual allegations to support Plaintiff's claims in this regard. Further, even assuming that ADA Fallon presented false or fabricated evidence to the Grand Jury, she still would be entitled to absolute prosecutorial immunity for this conduct. *See Bernard*, 356 F.3d at 503; *Dory*, 25 F.3d at 83; *Pinaud*, 52 F.3d at 1149; *Taylor*, 640 F.2d at 452; *J. & W. Trading & Leasing*, 2015 WL 4135961, at *3.

Although Plaintiff argues that ADA Fallon "substituted her own advice and opinion as to the existence of probable cause for that of the Albany Police Department detectives," a reasonable prosecutor would view this as ADA Fallon exercising her prosecutorial discretion to disagree with the police and present the matter to a grand jury for that body's

---

[5] The Court presumes that Plaintiff's statements in the transcript were inculpatory because the Complaint alleges that the Grand Jury returned an indictment based only on this evidence.

determination whether probable cause existed. The fact that a judge later found the evidence presented to the Grand Jury was insufficient to sustain criminal charges against Plaintiff does not mean that ADA Fallon created or fabricated evidence against Plaintiff to obtain the Indictment, or that there was no probable cause for the prosecution. *See Blasini v. City of New York*, 11 CIV. 3022 SAS, 2011 WL 6224605, at *5 (S.D.N.Y. Dec. 14, 2011)("[T]he dismissal of the Indictment for lack of legally sufficient evidence meant only that the People lacked evidence to establish a prima facie case of guilt. The dismissal, therefore, did not serve to rebut the presumption of probable cause arising from the Indictment.")(interior quotation marks and citations omitted).

Assuming, *arguendo*, that Plaintiff's statements made during her interview with the police are unreliable or would be inadmissible at trial because they were obtained in violation of *Miranda* and without the presence of an attorney, Plaintiff presents no authority for the proposition that the use of such evidence in a grand jury removes a prosecutor from the protections of absolute immunity.  The Court agrees with ADA Fallon that whether the criminal court would have suppressed the out-of-court statements made to the police during the pendency of the underlying criminal matter has no bearing on ADA Fallon's prosecutorial discretion to use this evidence to initiate a criminal prosecution against Ms. Brown.  Just as the courts have found that absolute prosecutorial immunity applies even when a prosecutor presents false or fabricated evidence to a grand jury, the Court concludes that absolute immunity applies to conduct of presenting to a grand jury evidence that is unreliable or evidence that would be inadmissible at trial.

To the extent Plaintiff contends that ADA Fallon violated Plaintiff's rights by failing to

17

disclose exculpatory *Brady* material, her decisions regarding the disclosure of *Brady* material fall squarely within a traditional prosecutorial function during the judicial phase of the criminal process.  She therefore is entitled to absolute immunity with regard the failure to make these disclosures.  *See Hill*, 45 F.3d at 662 (Granting absolute immunity to a prosecutor who allegedly failed to turn over *Brady* material because "this omission occurred after the prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy function.")(citing *Imbler*, 424 U.S. at 416, 430); *see, e.g., Warney*, 587 F.3d at 125 ("If the conduct challenged by Warney had occurred during Warney's trial, that is, if the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); but they would be absolutely immune from personal liability. The reason that is so is that the disclosure of evidence to opposing counsel is an advocacy function.")(citing *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir.1986) (a prosecutor's "non-disclosure of exculpatory information [is] certainly entitled to absolute immunity")).

For the reasons discussed above, ADA Fallon has satisfied her burden of establishing that she is entitled to absolute prosecutorial immunity for all alleged conduct underlying Plaintiff's §1983 claims against her.

### c.  State-Law Malicious Prosecution Claim

ADA Fallon argues that the Court should dismiss Plaintiff's state-law malicious prosecution claim on the merits, or alternatively, if all federal question claims are dismissed the Court should decline to exercise supplemental jurisdiction over the state law claim.

18

The Court will decline to exercise supplemental jurisdiction over the state-law malicious prosecution claim. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)("a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction").  In making this determination, the Court "balances the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Here, all factors weigh in favor of declining supplemental jurisdiction over Plaintiffs' state-law claims.  First, judicial economy favors dismissal in light of the fact that the case is at the pleading stage.  While the parties participated in an initial conference with Magistrate Judge Lovric, it appears that there has been no discovery demands served by either ADA Fallon or the Plaintiff, and no discovery has been exchanged.  Dkt. 27.  Further, Judge Lovric stayed the deadlines and schedules in this matter pending the outcome of the instant motion.  Dkt. 28.  "Second, refiling in state court will present only a minor inconvenience to the parties." *Corley v. Vance*, 365 F. Supp. 3d 407, 462 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 Fed. Appx. 62 (2d Cir. 2020)(unpublished).  "Third, proceeding to state court will place none of the parties at any disadvantage relative to their current positions in this litigation." *Id.* at 462–63.  Moreover, even

> [w]here a state law claim would be barred by the statute of limitations, courts
> in the Northern District have still declined to exercise supplemental jurisdiction
> as the remaining state law claims would be protected by New York Civil
> Procedure Law and Rules § 205(a), which allows for a tolling of the statute of
> limitations. *See* N.Y. C.P.L.R. § 205(a); *Yupa v. Country Stone & Fence*, 2017
> WL 27957, at *5 (E.D.N.Y. 2017); *Trinidad v. New York City Dept. of
> Correction*, 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006).  Further, 28 U.S.C. §
> 1367(d) provides that the period of limitations for any supplemental claim

"shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).

*Tooly v. Schwaller*, 7:13-CV-1575 (DNH/ATB), 2019 WL 1639942, at \*2 (N.D.N.Y. Apr. 16, 2019).  Thus, because "the applicable statute of limitations would not bar plaintiff from re-filing [her] claim in New York state court, there is 'no unfairness in declining to exercise supplemental jurisdiction.'" *Id.* (quoting *Rizvi v. Town of Wawarsing*, 654 Fed. Appx. 37, 40 (2d Cir. 2016)).  And fourth, "comity dictates that the Court decline to decide" the dispute raised by the state-law malicious prosecution claim. *See Corley*, 365 F. Supp. 3d at 463.

## V.    CONCLUSION

For the reasons discussed above, ADA Fallon's Rule 12(c) motion, Dkt. 25, is **GRANTED.**  Any claims brought against ADA Fallon in her official capacity are **DISMISSED with prejudice**, the § 1983 claims alleged in the Complaint are **DISMISSED with prejudice**, and the Court declines to exercise supplemental jurisdiction over the state-law malicious prosecution claim asserted in the Complaint.  This state-law malicious prosecution claim is **DISMISSED without prejudice** to refiling in New York State Court within thirty (30) days of this Decision and Order, pursuant to 28 U.S.C. § 1367(d).

The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: September 8, 2022

Thomas J. McAvoy
Senior, U.S. District Judge

20